## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CURE CONSULTING, LLC, *et al.*, | |
| *Plaintiffs,* | CIVIL ACTION |
| v. | NO. 21-04187 |
| TORCHLIGHT TECHNOLOGY GROUP LLC, *et al.*, | |
| *Defendants.* | |

**PAPPERT, J.**                                         **February 23, 2023**

### MEMORANDUM

This is the third iteration, in the second case before two judges, of the Plaintiffs' lawsuit against individuals and entities for whom they worked as consultants and employees.  In their first lawsuit, Colin Sholes, Carl Vernon and Cure Consulting, LLC, a company owned and operated by Sholes that creates "software solutions," sued Torchlight Technology Group, LLC ("TTG"), Torchlight Equity Comp, LLC ("TEC"), Independence Holding Company ("IHC"), Matthew Morano, Helene Seydoux and Andrew Guy alleging copyright infringement and asserting ten pendent state law claims.

After amending their Complaint, Sholes, Vernon and Cure sought to withdraw the case so they could establish standing for the infringement claim.  The Court allowed them to do so, while noting that Federal Rule of Civil Procedure 41(d) allows the Court to order plaintiffs to pay all or part of the costs of the previous action if they voluntarily dismiss their case and then file an action based on or including the same claims against

the same defendants.  Moreover, attorneys' fees may also be awarded under Rule 41(d) where, as here, the statute on which the original suit is based allows their recovery.

Sholes, Vernon and Cure immediately refiled, against the same Defendants, their copyright claim with eight of the same pendent state law claims.  The individual Defendants and entity Defendants separately move to dismiss this second lawsuit under Federal Rule of Civil Procedure 12(b)(6); they also seek, pursuant to Rule 41(d), an order awarding the fees and costs they incurred defending the first case.  (ECF 2, 9.) The Court grants the motions, dismisses the copyright claim with prejudice and declines to exercise supplemental jurisdiction over the pendent state law claims. Defendants may file a separate petition for attorneys' fees and costs.

I

Plaintiffs filed their first Complaint in *Sholes, et al. v. Torchlight Technology Group LLC, et al.,* No. 2:21-cv-01294, in March of 2021.  *See* (ECF 1).  They alleged copyright infringement of their software application Global ID and brought multiple state law claims concerning Defendants' alleged failure to distribute an equity payout from the sale of TTG.  (*Id.*)  TTG and IHC filed separate answers with cross-claims against the individual Defendants (ECF 2, 4) and the individual Defendants moved to dismiss the Complaint (ECF 3).  They argued that Global ID constituted a "work for hire" under the parties' Proprietary Information, Competition and Inventions Assignment Agreements (the "Proprietary Agreements").  (Mem. L. Supp. Mot. Dismiss 3–4, ECF 3-1.)  The Proprietary Agreements established that Sholes and Vernon's creations would become TTG's proprietary information and inventions, but allowed Sholes and Vernon to exempt certain software they created prior to signing the

2

Agreements.  In response to the motion, Plaintiffs amended their Complaint to substitute a different software, ROVER, for Global ID.  (ECF 7).

The individual Defendants moved to dismiss the Amended Complaint (ECF 10) and the cross-claims against them (ECF 9).  They contended Plaintiffs were prohibited from bringing an infringement claim because they hadn't registered the copyright for ROVER until *after* filing their lawsuit.  (Mem. L. Supp. Mot. Dismiss 6, ECF 10-2).  In June of 2021, Plaintiffs moved to voluntarily withdraw their suit pursuant to Rule 41(a)(2) (ECF 20) claiming they needed "to withdraw the instant action and then refile the same as to establish standing to bring Plaintiffs' infringement claim" so that the Court would "maintain[] Subject Matter Jurisdiction over the entire dispute."  (Mem. L. Supp. Pls.' Mot. Voluntary Withdraw 2, ECF 20.)  In August of 2021, while their motion to withdraw was pending, Plaintiffs registered with the United States Copyright Office a software product called Ladman.  (Compl. Ex. A, ECF 1-1.)  On September 22, 2021, the Court granted Plaintiffs' motion and dismissed their Amended Complaint without prejudice, but stated that Plaintiffs could be ordered to pay Defendants' costs and fees if they refiled the same claims against the Defendants.  (ECF 32); *see* Fed. R. Civ. P. 41(d)(1).

Plaintiffs filed their new Complaint against the same Defendants that day. (ECF 1).  But they did not mark this second case as related to the first and it was randomly assigned to Judge Slomsky before being reassigned to this Court several months later.  (ECF 14.)  Sholes and Vernon again allege that in 2013 they formed Cure Consulting, a company that creates software for clients' specific needs.  (Compl. ¶ 1, ECF 1).  In 2014, Plaintiffs began "creating and licensing various software" for TTG as

3

consultants. (*Id.* ¶ 9.) TTG is a "data lead broker" that sells web-based leads to companies. (*Id.* ¶ 11.) TTG had no independent advertising or reporting software to track consumers' web activity, so they engaged Plaintiffs to create software that they could license for this purpose. (*Id.* ¶¶ 13–14.) Ladman was one of the software products licensed to TTG. (*Id.* ¶ 10.) Plaintiffs claim they hold the registered copyright to the Ladman software—which they created in January of 2016. (*Id.* ¶¶ 4, 7.) Because Ladman imports and delivers leads from Facebook (*Id.* ¶ 5), it was "invaluable" to TTG as a data lead broker. (*Id.* ¶¶ 5, 11.) Plaintiffs claim that under their licensing agreement, which they have not attached to any of their Complaints in these cases, TTG was required to "pay a licensing fee in the form of a profit share to Plaintiffs in return for the use of computer software and advertisements that they developed to fit the company's needs." (*Id.* ¶ 14.)

TTG began to rely on Plaintiffs' software to such an extent that they eventually sought to hire Sholes and Vernon as employees because they wanted exclusive use of Plaintiffs' software. (*Id.* ¶ 17, 20, 24.) But Sholes and Vernon would only work exclusively for TTG if the Defendants agreed to give them equity in the company and ownership of the intellectual property rights to the software they already created. (*Id.* ¶¶ 18, 22.) Defendants agreed, and in exchange for the exclusive use of Plaintiffs' software, they promised Sholes and Vernon each nine percent equity in TTG, paving the way for Sholes and Vernon to receive a "large distribution" in the event TTG was sold. *See* (*id.* ¶¶ 20, 24, 32, 33, 40). To facilitate this process, Defendants created TEC, an entity that would hold the proceeds from any sale of TTG. (*Id.* ¶ 25.) Thus, Plaintiffs became shareholders in TEC. *See* (*id.* ¶¶ 25–26, 35–40, 55). Finally, so that

Sholes and Vernon would retain the IP rights to the software they created prior to their exclusive employment with TTG, they signed Proprietary Agreements outlining their ownership of certain software. (*Id.* ¶¶ 27–32.) Under the Proprietary Agreements, all works created during their employment with TTG would be considered works for hire and owned by TTG; software created prior to their formal employment—including Ladman—would continue to be used by TTG but would remain the Plaintiffs' property. (*Id.* ¶ 29, 33; Proprietary Agreements § 3, Ex. B, C, ECF 1.)

In June of 2019, IHC bought twenty-three percent of TTG for roughly $2 million (*Id.* ¶ 42), but neither Sholes nor Vernon received any money from the sale. (*Id.* ¶ 43.) In February of 2020, Morano told Sholes IHC would buy the remaining shares of TTG and that Sholes and the rest of the TTG shareholders would receive a payout when the company was sold. (*Id.* ¶ 49.) In April, IHC bought the remaining shares of TTG for an estimated $15 million. (*Id.* ¶¶ 50–51.) Unbeknownst to Sholes and Vernon, however, the Defendants had dissolved TEC. They then required Sholes and Vernon to sign new employment contracts. (*Id.* ¶¶ 55–56.) After signing the new contracts, Sholes and Vernon were told there would be no payments from the sale of TTG. (*Id.* ¶ 58.) In sum, Sholes and Vernon never received any money from the sale of TTG, while Defendants continue to use their copyrighted software, ostensibly without their permission. (*Id.* ¶¶ 64-67).

Plaintiffs allege copyright infringement based on Defendants' use of the Ladman software. (*Id.* ¶¶ 3–8, 98–104.) They also seek a declaratory judgment under Pennsylvania's Declaratory Judgment Act, and assert seven additional state law claims for breach of contract, unjust enrichment and quantum meruit, fraud in the

inducement, breach of fiduciary duty; fraud, conversion, theft and embezzlement (brought collectively in one count); civil conspiracy, and unfair competition. (*Id.* ¶¶ 70–140.)

## II

To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Well-pleaded factual allegations are presumed to be true, but the court must "then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. This presumption "attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotations and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016)). A pleading stating only "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted). "Naked assertions devoid of further factual enhancement" are similarly insufficient. *Id.* (internal quotations and citations omitted). Finally, courts are not limited to the four corners of the complaint when considering a motion to dismiss but may consider

evidence integral to or explicitly relied upon in the complaint. *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (citations and internal quotations omitted).

III

Two elements must be proven to establish copyright infringement:  ownership of a valid copyright and unauthorized copying of original elements of the work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Tanksley*, 902 F.3d at 173.  The unauthorized copying element has two components: actual copying and material appropriation[1] of the copyrighted work. *Tanksley*, 902 F.3d at 173.  For a copyright infringement claim to withstand a motion to dismiss, the complaint must allege:  "(1) which specific original works are the subject of the copyright claim; (2) ownership of the copyrights in those works; (3) registration of the works in question with the Copyright Office in accordance with 17 U.S.C. § 101 *et seq.*; and (4) by what acts the defendant infringed the copyright." *Browne v. Zaslow*, 103 F. Supp. 3d 666, 671 (E.D. Pa. 2015) (citing *Key Consol. 2000, Inc. v. Troost,* 432 F. Supp. 2d 484, 488 (M.D. Pa. 2006)); *see also Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, 529 F. Supp. 3d 303, 311 (D. Del. 2021) (stating the four-factor test used in the Third Circuit).

Plaintiffs plausibly allege the first three factors.  The Ladman software is the subject of the claim (Compl. ¶¶ 3, 6–8, 98–102), they own the Ladman software (*Id.* ¶¶ 4, 7–8), and Ladman is registered with the Copyright Office (*Id.* ¶ 7).  Plaintiffs do not, however, allege how Defendants infringe upon their copyright.

---

[1]     "Courts have fashioned different names for this second requirement:  improper appropriation, substantial similarity, legal copying, wrongful copying, and illicit copying—all of which refer to the same second requirement."  4 *Nimmer on Copyright* § 13D.02 (2022).

Plaintiffs conclusorily state that Defendants "have knowingly infringed" upon Plaintiffs' rights and that Defendants have "stolen," "misappropriated," and continue to use their software "without permission." (*Id.* ¶¶ 66–68, 101.) But any allegedly unauthorized use stems directly from the Defendants' purported breach of the licensing agreement. *See infra* Section III.B. Plaintiffs do not allege by what acts Defendants infringe upon their rights. Plaintiffs do not allege how Defendants are copying their software; they do not state if or when they revoked Defendants' right to use the Ladman software they licensed to them; nor do they allege that Defendants are using the software outside the scope of the license. Plaintiffs' conclusions are devoid of any "factual enhancement," *Iqbal*, 556 U.S. at 678, and fail to plausibly state a claim for copyright infringement.

The insufficiency of their factual allegations aside, Plaintiffs cannot state a copyright infringement claim because the essence of such a claim is a contractual dispute over the licensed software, not one arising under the Copyright Act. *See United States Naval Inst. v. Charter Commc'ns, Inc.,* 936 F.2d 692, 695 (2d Cir. 1991) (Although an exclusive licensee may breach the contractual obligations imposed on it by the license, it cannot infringe the copyright rights conveyed to it.) A mere "aroma of copyright" is not sufficient to make an action one arising under the Copyright Act, *Simon & Flynn, Inc. v. Time Inc.*, 513 F.2d 832, 833 (2d Cir. 1975), and federal courts consistently dismiss complaints in copyright cases that present only questions of contract law. *Scholastic Ent., Inc. v. Fox Ent. Grp., Inc.*, 336 F.3d 982, 986 (9th Cir. 2003). In matters involving licensing agreements, whether a licensor has a claim for copyright infringement depends upon the nature of the licensee's violation of the

licensing agreement.  If the licensee's conduct constitutes a breach of a covenant,[2] the resulting action is for breach of contract.  3 *Nimmer on Copyright* § 10.15; 5 *Patry on Copyright* § 17:43 ("[I]f there is a violation of a covenant, only a breach-of-contract claim will lie.")  But if the licensee fails to satisfy a condition[3] to the granting of the license, then the licensor's rights have not been effectively granted to the licensee.  This type of violation breaches a condition precedent to the contract, and the licensee's use of the copyrighted material is unauthorized and may constitute copyright infringement.  3 *Nimmer on Copyright* § 10.15; 5 *Patry on Copyright* § 17:43; *see also Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998).  State law determines whether a contract term is a covenant or a condition, and Pennsylvania law "highly disfavor[s] conditions."  5 *Patry on Copyright* § 17:43; *see W. Dev. Grp., Ltd. v. Horizon Fin., F.A.*, 592 A.2d 72, 76 (Pa. Super. Ct. 1991) ("Generally, an event mentioned in a contract will not be construed as a condition precedent."); *see also Beaver Dam Outdoors Club v. Hazleton City Auth.*, 944 A.2d 97, 106 (Pa. Commw. Ct. 2008) (same).

The Plaintiffs' allegations, even on the third attempt, remain a bit tough to follow and include a red herring or two.  The copyright claim is certainly one, as to a lesser degree are the Proprietary Agreements.  What remains obvious is that the Plaintiffs' claim is for breach of contract.  They allege they entered into a licensing agreement with TTG pursuant to which TTG licensed the Ladman software in

---

[2]     A covenant is a promise, which is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."  Restatement (Second) of Contracts § 2 (1981); 1 *Williston on Contracts* § 1:2 (4th ed.); *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010).

[3]     A condition is an act or event that must occur before performance is due.  *See* Restatement (Second) of Contracts § 224.

exchange for a licensing fee.  (Compl. ¶¶ 9–10, 13–14, ECF 1.)  That fee consisted of a "profit share."  (*Id.* ¶ 14.)  Eventually, Plaintiffs became employees of the company so TTG could exclusively licensee Plaintiffs' software—including Ladman.  (*Id.* ¶¶ 18, 20, 24, 33.)  In exchange for this exclusive use, Plaintiffs were given nine percent equity in TTG and a promised share of the proceeds in the event TTG was sold.  (*Id.* ¶¶ 18, 20, 22, 24, 32–33, 40.)  Sholes and Vernon claim TTG was sold, but they never received any of the sale proceeds, which should have been distributed to them and the other TEC shareholders.  (*Id.* ¶¶ 44, 50, 55, 60, 64–65).

Defendants' failure to pay Sholes and Vernon any of the TTG sale proceeds is a breach of a covenant—not a condition—of the licensing agreement between the parties. *See Wolfe*, 583 F. Supp. at 56 (finding that the "obligations defendants may have had to plaintiff . . . were the subject of the various contractual agreements between them."); *Graham*, 144 F.3d at 237 (holding that the payment of royalties was a covenant under New York law); *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) (holding that all license terms except those that limit the license's scope are covenants and breaches of covenants are only actionable under contract law); *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 387 F. Supp. 2d 521, 534 (M.D.N.C. 2005) ("Courts have held payment terms are covenants where permission [to use the copyrighted product] precedes payment.")  Plaintiffs' infringement claim requires a determination of each parties' rights and obligations under a licensing agreement; it does not require an interpretation of the Copyright Act or present a federal question. The essence of the claim is for breach of contract and at this point it would be futile for Plaintiffs to try it again.

IV

Plaintiffs' remaining claims are based on state law.  A party seeking to invoke the Court's diversity jurisdiction must allege complete diversity.  Fed. R. Civ. P. 8(a)(1); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (Without some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant.)  Complete diversity does not exist here, and Plaintiffs did not invoke diversity jurisdiction in their Complaint, instead claiming the Court had original jurisdiction over the copyright claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).  (Compl. ¶¶ 13–14.)  When the claims over which the Court would have had original jurisdiction are dismissed prior to trial, the court "*must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted) (emphasis in original).  No justification exists for keeping these claims, which should have been brought in state court all along, in federal court.  *See also* 3 *Nimmer on Copyright* § 12.01 (If a plaintiff's count for copyright infringement is dismissed prior to trial, most courts decline to exercise jurisdiction over any pendent state claims); 5 *Patry on Copyright* § 17:53 (If the copyright claim is dismissed before trial, "the proper course is usually to dismiss the state claim as well.").

V

Finally, Defendants seek attorneys' fees and costs incurred in defending the first case.  Fed. R. Civ. P. 41(d)(1).  Attorneys' fees may be awarded as "costs" under Rule

41(d) when the statute on which the original suit is based allows for their recovery. *Garza v. Citigroup Inc.*, 881 F.3d 277, 279 (3d Cir. 2018). The Copyright Act allows for such recovery. 17 U.S.C. § 505 ("[T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs.") Rule 41(d) is meant to "prevent vexatious litigation, forum shopping, and attempts to gain tactical advantage by dismissing and refiling the suit." *Ross v. Infinity Ins. Co.*, No. 12-5050, 2013 WL 2495114, at *2 (E.D. Pa. June 10, 2013). Furthermore, such an award is reasonable when the subsequent claim is "identical, or nearly identical." *Id.* (citations omitted).

The Complaint filed in this case is nearly identical to the two previously filed in the first action. Plaintiffs were told of the potential consequences of filing the same claims against the same Defendants but did so nonetheless. (Order Granting Mot. to Withdraw 1 n.1, ECF 32). Defendants may file a petition for attorneys' fees and costs within thirty days.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.